```
             IN THE UNITED STATES DISTRICT COURT FOR
           THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                              *
JOHN GOODMAN,
                              *
     Plaintiff,
                              *    CIVIL NO.: WDQ-08-3240
          v.
                              *
EAGLE ALLIANCE,
                              *
     Defendant.
                              *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

John Goodman sued Eagle Alliance ("Eagle") for employment discrimination and retaliation in violation of 42 U.S.C. § 1981. For the following reasons, Eagle's motion for summary judgment will be granted.

I.   Background[1]

Eagle--a joint venture between the Computer Sciences Corporation and Northrop Grumman--provides information technology services for the National Security Agency ("NSA"). Def.'s Mot. Summ. J. 2. From December 1, 2001 to August 3, 2006, Goodman was a Quality Analyst in Eagle's Delivery Assurance group. John Goodman Dep. 60:11-15, 64:10-11, 70:2-7, July 24,

---

[1] For the purposes of Eagle's motion for summary judgment, Goodman's "evidence is to be believed, and all justifiable inferences are . . . drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

1

2009.  His responsibilities included creating quality processes, performing internal audits, and reviewing the work of other groups at Eagle.  *See id*.

In September 2005, Goodman's group was audited by Eagle's "ISO" group in preparation for an outside audit meant to ensure compliance with the standards of the International Organization for Standardization ("ISO").[2]  John William Garten Dep. 8:2-5, 26:22-27:5, Sept. 23, 2009.  The ISO group identified several problems within Goodman's group, including his failure to meet certain responsibilities.  *Id*. 27:16-20; Goodman Dep. 111:6-21.

On October 18, 2005, Goodman's supervisor, William F. Hill, met with him to discuss the internal audit report.  Goodman Dep. 107:4-5.  Hill told Goodman that he was responsible for the problems identified in the report.  *Id*.  Goodman left the meeting upset, and when he returned to his cubicle, he stated--to no one in particular--that if Hill intended to hold him responsible for the problems in the audit report, he would not go "out by [him]self," and would go "out with a bang."  *Id*.  Other Eagle employees overheard the statement and reported it to management.  *Id*. 115:2-7.

---

[2] "ISO" is apparently an acronym based on the Organization's name in a foreign language.

2

On October 20, 2005, Goodman was suspended with pay for six days by Human Resources Director, Shari L. Davis. *Id*. 118:4-5; Def.'s Mot. Summ. J., Ex. 6 (Letter from Shari L. Davis, Human Resources Director to John Goodman, Oct. 20, 2005). In a meeting with Davis before the suspension, Goodman explained that his statement was said in a "rhetorical [or] joking manner." *Id*. 118:15-21. Davis gave Goodman a letter providing reasons for the suspension:

> [I]t has come to management's attention that
> you were involved in an incident in which
> you made statements that created great concern
> among management as well as co-workers. It has been
> Reported that on October 18, 2005, you exhibited
> angry behavior and made a statement that was
> threatening in nature . . . . that resulted in
> concerns about safety in the workplace.

*Id*. The letter also stated that Goodman's conduct violated section 3.1.8 of Human Resources Management Policy 207. *Id*. Under that section, "any conduct which physically harms, or threatens to harm, any persons or property, including intimidation, physical altercations, [or] threats (whether verbal, electronic or written)" is "considered unacceptable and may be the basis of disciplinary action." Def.'s Mot. Summ J., Ex. G.

On April 11, 2006, Goodman filed a Formal Complaint of Discrimination with NSA's Office of Equal Employment Opportunity ("OEEO"), in which he alleged that his suspension was the result

3

of race and gender discrimination. *Id*. 130:7-131-11; Def's Mot. Summ J., Ex. A4. The complaint alleged that Eagle applied higher standards of workplace conduct to African Americans and men than to Caucasians and women. *Id*. Goodman believed that his suspension was based on race because other Eagle employees, including Hill, had "displayed angry behavior" and "been disrespectful" at work, but had not been suspended. *Id.*; Goodman Dep. 137:5-8. He also noted that he was the only African American in his part of the office. Def's Mot. Summ J., Ex. A4.

Several days later, Goodman inadvertently printed a copy of the complaint on a shared printer at Eagle. Goodman Dep. 144:22-146:6. It was found by Dennis Strother, another Eagle employee, who showed it to Deborah Bodnar, Director of Delivery Assurance, who was Goodman's second-line supervisor. Dennis E. Strother Dep. 59:1-13, Sept. 23, 2009. Strother also told Hill about the complaint. Hill Dep. 153:1-7. None of the three read the complaint. Strother Dep. 59:1-13; Hill Dep 153:1-7.

In May 2006, Goodman received a performance evaluation for the period of April 2005 to March 2006. Goodman Dep. 204:2-4; Def.'s Mot. Summ. J., Ex. A9. Hill conducted the evaluation and rated Goodman's performance in several "Key Result Areas" or ("KRAs") "job objectives." *Id*. The evaluation noted that

4

Goodman had "missed" four of the five job objectives with which he had been tasked during the evaluation period. *Id.* Among these was the completion of "development activities identified in [Goodman's] approved individual development plan." *Id.* Goodman missed this objective by failing to complete training prescribed in the plan. *Id.* Goodman also missed the second objective, which was to "support implementation of [the] [Quality Management System] through internal auditing and performance assessments." *Id.* Hill stated in the Comments section of the evaluation that he had received "numerous complaints from [other employees at Eagle whose groups Goodman had audited] regarding schedule slippage, late reports, unclear documentation, and poor communications of internal audit results." *Id.* Hill also noted that a group had requested that Goodman not be assigned to it for internal audits because of his "confrontational approach, and failure to meet agreed schedules for meetings and audit reporting." *Id.* Goodman testified that the explanations Hill provided for his ratings were accurate. Goodman Dep. 204:14-208:9.

Goodman also fared poorly on six of nine "performance factors." *Id.* The evaluation noted that he performed "below expectations" in (1) timeliness of his work product, (2) quantity of output, (3) use of resources, (4) independent work

5

ability, (5) work habits, and (6) adding skills and capabilities. *Id*. Goodman's "Overall Performance Evaluation" was "Partially Meets Expectations," the second lowest of five possible ratings.[3] *Id*. Hill concluded, "Goodman's performance throughout th[e] rating period ha[d] been inconsistent, unpredictable, and d[id] not meet expectations for someone of his level and years of experience and abilities." *Id*.

Because of Goodman's failure to achieve job objectives during the rating period, he was placed on a Performance Improvement Plan ("PIP"). *Id*.[4] The PIP prescribed seven tasks that were to be completed by August 4, 2006. Goodman Dep. 226:14-227:7; Def.'s Mot. Summ. J., Ex. A10. Most of the tasks were computer-based training courses, which required Goodman to watch a computer presentation and be tested about its contents. *Id*. 229:15-230:3. His progress was monitored at weekly support meetings with Hill and Corporate Human Resources Manager, Stephanie Ivey, who supervised the PIP. *Id*. 228:18-229:18; Hill

---

[3] From highest to lowest, the performance ratings are (1) "Outstanding/Far Exceeds Expectations"; (2) "Consistently Exceeds Expectations"; (3) "Meets/Occasionally Exceeds Expectations"; (4) "Partially Meets Expectations"; and (5) "Below Expectations." *Id*.

[4] Under section 4.3 of Human Resources Management Policy 206, "[a] PIP may be required for employees with overall ratings of 'Partially Meets Expectations' at the [evaluator's] discretion and in consultation with Human Resources." Def.'s Mot. Summ. J., Ex. H.

Dep. 184:18-21.  Goodman was told that he would be fired if he failed to complete the PIP by the deadline.  Goodman Dep. 227:20-228:5.

Goodman believed the performance evaluation was "unfair . . . fabricated . . . [and] inaccurate."  *Id*. 211:13-19.  Although Goodman did not dispute the basis for Hill's evaluation, *id*. 204:14-208:9, Goodman believed that Hill's unreasonable expectations led to the problems identified in the evaluation, *id*. 245:18-246:16.  Goodman testified that his working relationship with Hill had been strained since Hill took over as his supervisor in early 2004.  *Id*. 87:1-98:-11.  Goodman had been responsible for providing Hill with weekly Quality Analyst status reports, and Hill had often expressed dissatisfaction with these in a "condescending, disrespectful" manner.  *Id*. 94:9-97:2.  Hill had given Goodman an interim performance evaluation for April 2004 to December 2004 that rated his performance as "Below Expectations," the lowest possible rating.  Pl.'s Opp., Ex. 12.[5]  Hill's criticism of Goodman after the October 2005 audit report was another instance of what Goodman

---

[5] By contrast, Goodman's annual performance evaluation for April 2004 to March 2005, also conducted by Hill, was good. Def.'s Mot. Summ. J., Ex. A8.  Hill noted that "Goodman [had] faced a number of unexpected challenges [during the rating period] that he worked very hard to overcome" and that "[Goodman's] attention to detail proved very beneficial for [his group] and Eagle Alliance as a whole."  *Id*.  Goodman's overall performance was rated as "Meets/Occasionally Exceeds Expectations."  *Id*.

7

characterized as "contention" between the two. *Id*. 107:4-5; 245:11.

Believing that his conflict with Hill caused his poor performance evaluation, Goodman asked Bodnar in a June 2006 email if he could begin reporting directly to her rather than to Hill. *Id*. 244:3-246:16. Bodnar denied this request. *Id*.

Goodman also believed he was given a poor evaluation and placed on the PIP in retaliation for filing a complaint of discrimination after he was suspended. *See* Def.'s Mot. Summ. J., Ex. A7 (Email from John Goodman to NSA OEEO, May 19, 2006). He noted that a "reliable source" had told him his complaint was discovered and forwarded to Bodnar and Hill, who later placed him on the PIP. *Id*.

By August 3, 2006--the day before the PIP was to be completed--Goodman had finished four of the seven required tasks. *Id*. 260:11-261:16. He met with Bodnar and Hill, who cited his failure to complete the PIP as the reason for firing him. *Id*.

On December 2, 2008, Goodman filed this complaint. Paper No. 1. On October 23, 2009, Eagle moved for summary judgment. Paper No. 26. On November 9, 2009, Goodman moved for an extension of time to file his opposition. Paper No. 27. On

characterized as "contention" between the two. *Id*. 107:4-5; 245:11.

Believing that his conflict with Hill caused his poor performance evaluation, Goodman asked Bodnar in a June 2006 email if he could begin reporting directly to her rather than to Hill. *Id*. 244:3-246:16. Bodnar denied this request. *Id*.

Goodman also believed he was given a poor evaluation and placed on the PIP in retaliation for filing a complaint of discrimination after he was suspended. *See* Def.'s Mot. Summ. J., Ex. A7 (Email from John Goodman to NSA OEEO, May 19, 2006). He noted that a "reliable source" had told him his complaint was discovered and forwarded to Bodnar and Hill, who later placed him on the PIP. *Id*.

By August 3, 2006--the day before the PIP was to be completed--Goodman had finished four of the seven required tasks. *Id*. 260:11-261:16. He met with Bodnar and Hill, who cited his failure to complete the PIP as the reason for firing him. *Id*.

On December 2, 2008, Goodman filed this complaint. Paper No. 1. On October 23, 2009, Eagle moved for summary judgment. Paper No. 26. On November 9, 2009, Goodman moved for an extension of time to file his opposition. Paper No. 27. On

January 12, 2010, Goodman moved to amend his opposition. Paper No. 32.

## II. Analysis

### A. Goodman's Motions to Extend the Filing Period and Amend his Opposition

Under Local Rule 105.2.a, "[u]nless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within 14 days of the service of the motion." Goodman was served with Eagle's motion for summary judgment on October 23, 2009; thus, his opposition was due on November 9, 2009. On the evening of November 9, Goodman requested an extension of the filing period, explaining that because of counsel's participation in a case before the District of New Jersey, he was unable to complete work on the opposition. Eagle opposed the motion. On November 17, 2009--before the Court ruled on his motion to extend--Goodman filed an opposition.

Eagle contends that Goodman's motion to extend should be denied, and the untimely opposition should not be considered. Although counsel's work on other cases is not usually a basis for extending a filing period, the Court believes that Mr. Goodman should not be punished for his counsel's workload. Also, as Goodman notes, the extension requested was brief and brief extensions are usually consented to by opposing counsel as a matter of professional courtesy. Moreover, given that Eagle's

9

counsel was able timely to file a thorough reply to the opposition, it does not appear that Eagle would be prejudiced by the Court's consideration of Goodman's opposition. Accordingly, the motion to extend the filing period will be granted.[6]

B. Eagle's Motion for Summary Judgment

1. Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, "the judge's function is not . . .

---

[6] On January 12, 2010, Goodman moved to amend his opposition "to add some citations to legal authority and facts that were omitted from the initial opposition." Pl.'s Mot. to Amend 2. The "amended" motion appears merely to be a more polished version of the original opposition. Goodman offers no basis for the motion to amend; he merely believes the amended motion will facilitate the Court's "consideration of this complex case on the merits." *Id*. 1. He also asserts that the Court's consideration of the amended motion will not prejudice Eagle. *Id*. Eagle has opposed the motion.

Goodman's amended motion was filed two months after the parties completed briefing on Eagle's motion for summary judgment; he offers no basis upon which the Court should grant the motion; and the Court's consideration of the amended motion would prejudice Eagle, which would be forced to decide whether to allow new arguments to go unrebutted or bear the expense of drafting another reply. The motion to amend will be denied.

10

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

2. Discrimination under 42 U.S.C. § 1981

Goodman claims his (1) October 2005 suspension, (2) May 2006 placement on the PIP, and (3) August 2006 firing were disparate treatment in violation of 42 U.S.C. § 1981.[7]

---

[7] Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Employment discrimination claims under § 1981 require the same elements of proof as claims under

11

"Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of [*inter alia*] race."  *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994). When, as here, the plaintiff offers no direct evidence of discrimination, his burden of proof is governed by the three-step test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Goodman must show a *prima facie* case of discrimination. *Id*.  If he does so, Eagle must provide a legitimate, nondiscriminatory reason for its adverse employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  Then the burden shifts back to Goodman to prove that the proffered reason was pretext for discrimination.  *Id*. at 143.

      a.   Suspension

"To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures . . . the plaintiff must show: (1) that he is member of [a protected class], (2) that the prohibited conduct in which he engaged was comparable in seriousness to the misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees."  *Cook v. CSX Transp. Corp*., 988

---

Title VII of the Civil Rights Act of 1964.  *See Gairola v. Va. Dept. of Gen. Serv.*, 753 F.2d 1281, 1285-86 (4th Cir. 1985).

F.2d 507, 511 (4th Cir. 1993).[8]

Goodman has not presented evidence that the conduct leading to his suspension was comparable to the misconduct of Eagle employees who are not African American. The only evidence of misconduct by other employees is that Hill and two female Eagle employees had at times "displayed angry behavior" and "been disrespectful" at work, but had not been suspended. Def's Mot. Summ J., Ex. A4.; Goodman Dep. 137:5-8. Goodman was not suspended for angry behavior or disrespect, but for violating a Human Resources policy against making threats. Def.'s Mot. Summ. J., Ex. 6 (Letter from Shari L. Davis, Human Resources Director to John Goodman, Oct. 20, 2005). Such conduct is not comparable to mere anger or disrespect. Accordingly, Goodman has not shown a *prima facie* case of discrimination in the enforcement of employee disciplinary measures.

    b. PIP

A *prima facie* case of discrimination based on the assignment of the PIP requires Goodman to show (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) more favorable treatment of similarly situated employees outside his class. *See Cottman v. Rubin*, 35 Fed. Appx. 53, 55 (4th Cir. 2002). Eagle contends that the PIP

---

[8] *See also Ingram v. Giant Food, Inc.*, 187 F. Supp. 2d 512, 515 (D. Md. 2002).

was not an "adverse employment action."  The Fourth Circuit has held that an action is adverse only if it has a negative effect on the "terms, conditions or benefits of . . . employment." *Von Gunten v. Maryland*, 243 F.3d 858 (4th Cir. 2001).  Such actions are usually "what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *See Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981).  "There are many interlocutory or mediate decisions that were not intended to fall within the direct proscriptions" of § 1981.  *See id*.

Here, the PIP was a mediate decision designed to help Goodman improve his work performance, not to adversely affect the terms, conditions or benefits of his job.  *See Cottman v. Rubin*, 35 Fed. Appx. 53, 55 (4th Cir. 2002) (PIP was not an adverse employment action).[9]  Goodman argues that the PIP was unreasonably demanding, requiring him to stay late at work and to work at home.  But he offers no evidence that employees outside his class who received poor performance evaluations were not required to complete PIPs or were subject to less demanding PIPs.  Accordingly, Goodman has not proven a *prima facie* case of discrimination based on the PIP.

---

[9] *See also Nichols v. Caroline Bd. of Educ.*, 2004 U.S. Dist. LEXIS 2851, at *13 (D. Md. Feb. 23, 2004) (PIP was not adverse employment action); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003) (same).

     c. Firing

To prove a *prima facie* case of discriminatory firing under § 1981, Goodman must show: "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004). Eagle has offered evidence that Goodman was fired for failing to complete the PIP, which was assigned after a poor performance evaluation. Eagle argues that this shows that Goodman's job performance was unsatisfactory; thus, he cannot prove a *prima facie* case. Goodman responds that Hill's demands were unreasonable, and he was set up to fail the PIP. He also notes that his performance evaluation for the previous year was good.

Goodman has offered no evidence that Hill or any other supervisor had different expectations for him than other subordinates; nor has he shown that the PIP was unreasonable. Moreover, even assuming a *prima facie* case of discriminatory discharge, he offers no evidence of racial discrimination that would show Eagle's reason for firing him was pretextual. Goodman's subjective belief that he was the victim of discrimination is not sufficient. *See Moore v. Reese*, 817 F. Supp.

1290, 1295 (D. Md. 1993) ("In the employment discrimination context, a subjective belief of discrimination, however genuine, cannot be the basis of judicial relief.").

Goodman has not shown a genuine issue of material fact on his § 1981 discrimination claim.  Accordingly, Eagle's motion for summary judgment on Count One will be granted.

### 3. Retaliation under 42 U.S.C. § 1981

Goodman also claims that his placement on the PIP and ultimate discharge were in retaliation for filing a complaint with the NSA OEEO.  The *McDonnell Douglas* test is applicable to § 1981 retaliation claims. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003).  Goodman must prove a *prima facie* case of retaliation by showing that (1) he engaged in a protected activity, (2) his employer took an adverse employment action against him,[10] and (3) there is a causal connection between the protected activity and the adverse action.  *Honor*, 383 F.3d at 188.  Eagle concedes that Goodman's complaint to the OEEO was protected activity, but argues that

---

[10] In *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006), the Supreme Court held that unlike discrimination claims, retaliation claims are not limited to employer actions that affect terms, conditions and benefits of employment.  The second element of the prima facie case of retaliation only requires that a plaintiff "show that a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* at 68.

16

Goodman has not offered evidence showing a causal relationship between the filing of the complaint and his placement on the PIP and eventual termination.

"Very close" temporal proximity between the protected activity and adverse action can prove causation. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). However, if the protected activity and adverse action are more than a few months apart,[11] the plaintiff must provide evidence of retaliatory animus in the intervening period to prove causation. *Letteiri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

Goodman filed his complaint on April 11, 2006, was placed on the PIP in May 2006, and was fired on August 3, 2006. The proximity between the filing of the complaint and the PIP, and between the complaint and the firing, is sufficient *prima facie* proof of causation.

However, Goodman cites no evidence that Eagle's reasons for placing him on the PIP were a pretext for retaliation. Eagle has offered evidence that Goodman was placed on the PIP for his poor performance evaluation--the basis for which arose long before he filed his discrimination complaint. Goodman does not dispute the basis of the evaluation or its consistency with

---

[11] *See, e.g., Pascual v. Lowe's Home Ctrs.*, Inc., 193 Fed. App. 229, 233 (4th Cir. 2006) (three- to four-month period too long to establish causation); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) (six months too long).

Eagle's policy of placing employees with low performance ratings on a PIP.  Nor does he argue that Eagle's reason is "unworthy of credence."  *See Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004).  He merely attempts to show pretext by noting that Bodnar and Hill, who assigned the PIP, were aware of his complaint.  This evidence is insufficient to create a genuine issue of material fact whether assignment of the PIP was retaliatory.

Similarly, Goodman has not offered evidence that the reasons for his firing were pretexual.  When the PIP was assigned, Goodman was told that failure to complete it would result in his termination.  His argument that he was set up to fail the PIP is an unsubstantiated subjective belief, which, as noted above, is insufficient to create an issue of fact.  Goodman acknowledged that Hill and Ivey had weekly meetings with him to monitor his progress on the PIP, and Hill had given him an extension to complete the PIP on time.  He cites no evidence that the reasons for firing him were a pretext for retaliation.

Because Goodman has not shown a genuine issue of material fact with regard to his § 1981 retaliation claim, Eagle's motion for summary judgment on Count Two will be granted.

III. Conclusion

For the reasons stated above, Eagle's motion for summary judgment and Goodman's motion to extend the filing period will be granted.  Goodman's motion to amend his opposition will be denied.


<u>February 23, 2010</u>            _____/s/_____
Date                               William D. Quarles, Jr.
                                   United States District Judge